23 F.3d 401
 127 Lab.Cas. P 57,662
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lauris KONJEVICH, Plaintiff-Appellant,
v.
WASHING SYSTEMS, INCORPORATED, Defendant-Appellee.
 No. 93-1763.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1993.
Decided April 4, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-92-683-3)
 Angela D. Whitley, Gerald T. Zerkin & Associates, Richmond, VA, for appellant.
 Mary Lloyd Sinnott, LeClair, Ryan Joynes, Epps & Framme, P.C., Richmond, VA, for appellee.
 John D. Epps, Kevin D. Holden, LeClair, Ryan, Joynes, Epps & Framme, P.C., Richmond, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before LUTTIG and MICHAEL, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Lauris Konjevich ("Konjevich") appeals the order of the district court granting summary judgment to Washing Systems, Inc. ("WSI") on his claims for breach of a nondisclosure agreement, tortious interference with a business relationship and misrepresentation.*
 
 
 2
 Finding no error in the district court's order, we affirm.
 
 I.
 
 3
 Konjevich, an employee of Cintas Corporation, a rental uniform service, became dissatisfied with the management style of the company and decided to look for other work. He sent out resumes to an executive search company and proceeded to make personal contacts. He approached an employee of WSI, Dave Shelton, who was servicing a Cintas plant, and asked Shelton to inform him about any job openings Shelton might hear of during his service calls. Konjevich asked Shelton to keep this request a secret.
 
 
 4
 Later that evening, Shelton phoned his supervisor, Jim Watts, and reported the conversation with Konjevich. Watts advised Shelton that WSI would not consider hiring the employee of a customer without first informing the customer. The next day, Shelton told Konjevich about WSI's policy of informing the customer, and then asked Konjevich if he had a resume available. Konjevich gave him one, and again stated that his job search was to be kept confidential. Shelton forwarded the resume to Watts.
 
 
 5
 Shortly thereafter, Watts sent a letter to Konjevich stating that WSI was planning an expansion and looking for people experienced in the textile rental business. He agreed to try to meet with Konjevich for an initial interview, and reiterated that WSI would not hire a customer's employee without the customer's knowledge and approval. Watts then turned over the resume to the president of WSI, Andrew Morrow, who called his good friend, Joseph Detzel, executive vice-president of Cintas, and informed him that one of his employees was seeking work elsewhere.
 
 
 6
 Through Cintas' general manager, Howard Baron, Detzel informed Konjevich that the company would like to retain him and was willing to work with him for that purpose. Baron asked what Cintas could do to persuade Konjevich to stay. Konjevich did not respond. After a month, Baron, concerned with hiring a replacement for Konjevich, told him that he would have to leave if he could not work with the company and gave him sixty days notice. This would have allowed Konjevich to work through August 28, 1992. He was fired on August 20, 1992, however, for harassing a female employee by lifting her skirt while following her up a stairwell. Konjevich asserts that he was fired for looking for a new job and that the allegation of sexual harassment was untrue.
 
 II.
 
 7
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecast evidence, Ross, F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Id. at 248. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 A.
 
 8
 Konjevich first argues that the district judge erred by refusing to consider the Employer's Report of Separation and Wage Information from the Virginia Employment Commission. This form, completed by Mr. Baron, would support Konjevich's theory of his termination. However, Va.Code Sec. 60.2-623 (1992) precludes the use of information provided to the Virginia Employment Commission in any judicial or administrative proceeding.
 
 
 9
 Konjevich argues that, under Erie Railroad v. Tompkins, 304 U.S. 64 (1938), the Court should have considered federal procedural law rather than this Virginia law and should have allowed the Report to be admitted into evidence. While this court agrees that Erie requires that federal courts apply federal procedural rules, it does not agree that Erie would permit a federal court to ignore a state statute regarding state administrative policy.
 
 
 10
 The report was inadmissible and we conclude that no error occurred.
 
 B.
 
 11
 The district court found that no contract establishing a nondisclosure agreement between Konjevich and WSI was formed because consideration was lacking. Konjevich now argues that the act of submitting his resume to WSI was adequate consideration for the promise to keep it confidential. After thoroughly reviewing the record, we conclude that such a promise on the part of WSI did not exist. Even accepting that Konjevich may have stated twice to Shelton that his job search was confidential, and that Shelton may have responded that he could keep a secret, at the subsequent discussions and in the letter from Watts there was no hint of a promise of confidentiality. Konjevich's submission of his resume was a gratuitous act, designed to promote his job search. We agree with the district court that consideration was lacking and that no duty of confidentiality existed.
 
 C.
 
 12
 The next issue raised by Konjevich is whether there was sufficient evidence to establish that WSI intentionally interfered with his employment relationship with Cintas. The elements of such a cause of action in Virginia are stated in Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97 (1985), and include: (1) the existence of a valid contractual relationship; (2) knowledge of such a relationship on the part of the interferor; (3) intentional interference inducing or causing a breach of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.
 
 
 13
 The district court found that the requisite intent for such a cause of action was lacking, noting that Konjevich himself testified at his deposition that none of WSI's employees or executives intended to or had any reason to cause his termination at Cintas. Yet, Konjevich now tries to raise the simple act of calling an old friend with accurate and truthful news to an act of legal malice. As WSI points out, it gained no benefit or enrichment, nor did it scheme to gain some advantage at Konjevich's expense. By affidavit, Mr. Morrow stated he had not been asked, nor would he have agreed, to keep the resume confidential. He was following a long held company policy when he contacted his friend and customer, Joseph Detzel. Konjevich presented no counter evidence that could establish an intent to have him fired.
 
 
 14
 Even if Konjevich could prove such intent, however, no act of WSI caused the breach of his employment relationship. After receiving notice of his job search, Cintas made a sincere effort to keep him as an employee and solicited his suggestions. His failure to respond left Cintas in the difficult position of knowing that its plant manager was going to quit but being unable to hire a replacement. Even then, Cintas gave Konjevich a sixty-day notice, a time period shortened only by Konjevich's harassment of a female employee. Given that he was an at-will employee, Cintas was justified in terminating Konjevich and no act by WSI could have been the "but for" cause of the termination. None of the questions Konjevich would pose for the jury overcome his at-will employment status, and summary judgment was properly granted.
 
 D.
 
 15
 Konjevich also argues that the district court erred in finding that no fraud, misrepresentation, or reckless disregard occurred. As stated earlier, this argument fails for the reason that there was, on the part of WSI, no agreement or duty to keep Konjevich's resume confidential, and no damage to Konjevich flowed from its disclosure. See Community Bank v. Wright, 221 Va. 172, 175, 267 S.E.2d 158 (1980).
 
 E.
 
 16
 Finally, Konjevich appeals the district court's order dismissing his claim for punitive damages. In reviewing Virginia law, this Court has previously held:
 
 
 17
 Virginia does not permit recovery of punitive damages except upon proof of a degree of aggravation in the critical state of mind above the level required to establish liability for compensatory relief. Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 928 (4th Cir.1984) (emphasis added).
 
 
 18
 Here, the district court entered summary judgment against Konjevich on all his compensatory claims. Konjevich has made no showing that WSI's actions were the legal cause of any harm to him; his own testimony establishes that no one at WSI had any ill will toward him. At most, this case reveals a misunderstanding, far from the standard of "actual malice" required by Virginia law. Jordan v. Suave, 218 Va. 448, 453, 247 S.E.2d 739 (1978).
 
 III.
 
 19
 For the reasons stated, the decision of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 *
 The appellant has consistently but incorrectly referred to the appellee as Washington Systems, Inc