**Ali SHABAZZ, Plaintiff,**

v.

**PYA MONARCH, LLC, Defendant.**

**No. CIV.A. 202CV630.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 13, 2003.

798

LeRon W. Gilchrist, Sams & Scott, Norfolk, for Plaintiff.

Sara L. Berg, Hunton & Williams, Richmond, James P. Naughton, Hunton & Williams, Norfolk, for Defendant.

### ORDER AND OPINION

FRIEDMAN, District Judge.

This matter is before the court on a number of motions filed by the parties. First, Ali Shabazz ("plaintiff") filed a Motion for Voluntary Dismissal without prejudice, pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(2). PYA Monarch, LLC ("defendant") filed its opposition to the plaintiff's Motion as well as a Cross–Motion for Dismissal with Prejudice, pursuant to Rules 37 and/or 41(b). Shortly after the filing of these Motions, and before the court was able to rule on them, the defendant filed a Motion for Summary Judgment. After examination of the briefs and record, this court determines oral argument is unnecessary because the facts and legal arguments are adequately presented and the decisional process would not be significantly aided by oral argument. Based on the briefs, the court denies the plaintiff's Motion for Voluntary Dismiss, denies the defendant's Cross–Motion to Dismiss, and grants the defendant's Motion for Summary Judgment.

### I. Factual Background

On July 23, 2002, the plaintiff filed this lawsuit against the defendant in Virginia Beach Circuit Court, alleging that the defendant made false, slanderous, and defamatory statements to the Virginia Employment Commission ("VEC") and the United States Equal Employment Opportunity Commission ("EEOC") in response to the plaintiff's allegations of wrongful discharge. *See* Notice of Removal, Dkt. 1, Ex. A—Motion for Judgment. These statements contained information gathered by the defendant during its investigation into comments allegedly made by the plaintiff to a number of customers regarding the September 11, 2001 terrorist attacks. The plaintiff also alleges that the

defendant made defamatory statements in a report to the Federal Bureau of Investigation ("FBI"), where the defendant accused the plaintiff of "expressing terrorist ideations and desiring to support the same Muslim terrorists who participated in the September 11, 2001 attacks on the United States." *Id.* On August 12, 2002, the defendant timely removed the lawsuit to federal court based on diversity of citizenship grounds. *See* Notice of Removal, Dkt. 1. At the September 12, 2002 scheduling conference, a non-jury trial was set for May 1, 2003.

On November 27, 2002, the plaintiff filed his Motion for Voluntary Dismissal, seeking dismissal of the case without prejudice, pursuant to Rule 41(a)(2). *See* Pl.'s Mot. for Voluntary Dismissal, Dkt. 7. There was no accompanying memorandum of law attached to this Motion, as required by Local Rule 7(E)(1). From the Motion, it appears that the plaintiff seeks this voluntary dismissal so that he may (1) add a new party defendant, and (2) clarify and restate grounds in the Motion for Judgment. *Id.* On December 9, 2002, the defendant filed its response to the plaintiff's Motion, as well as a Cross–Motion for Dismissal with Prejudice, pursuant to Rules 37 and/or 41(b). *See* Def.'s Cross–Mot. for Dismissal with Prejudice, Dkt. 10 ("Cross–Motion"). The defendant's primary argument in support of the Cross–Motion is that based on the plaintiff's failure to comply with the Federal Rules of Civil Procedure, failure to reply to discovery requests, and failure to meet court-imposed deadlines, dismissal is appropriate. *See* Def.'s Mem. in Opp. to Pl.'s Mot. for Voluntary Dismissal and in Supp. of Def.'s Cross–Mot. for Dismissal with Prejudice, Dkt. 11. The plaintiff has failed to file a reply to the defendant's Response to his Motion and a response to the Cross–Motion. As the time has now elapsed for the plaintiff to file such pleadings, *see* Local Rule 7(E), the court deems

the Motion and Cross–Motion ripe for review.

However, before the court was able to rule on the Motions to Dismiss, the defendant filed a Motion for Summary Judgment. *See* Def.'s Mot. for Summ. J., Dkt. 12. The defendant lists five reasons why summary judgment is appropriate in this case, which include (1) Virginia law bars the plaintiff's claims regarding the defendant's communications with the VEC; (2) the defendant's communications with the VEC and the EEOC are absolutely privileged; (3) the defendant's communications with the FBI are absolutely privileged; (4) the plaintiff has failed to offer any evidence of malice; and (5) the alleged statements are not defamatory. The plaintiff has responded and the defendant has replied. Thus, this Motion is also ripe for review.

## II. Analysis

### A. Plaintiff's Motion for Dismissal without Prejudice

■ Motions to dismiss without prejudice pursuant to Rule 41(a)(2) are committed to the sound discretion of the district court. *See Teck Gen. P'ship v. Crown Cent. Petroleum Corp.,* 28 F.Supp.2d 989, 991 (E.D.Va.1998). The Fourth Circuit has held that motions under 41(a)(2) "should not be denied absent substantial prejudice to the defendant." *S.A. Andes v. Versant Corp.,* 788 F.2d 1033, 1036 (4th Cir.1986); *accord Teck,* 28 F.Supp.2d at 991 ("Typically such a motion is granted unless there is substantial prejudice or plain legal prejudice to the defendant.") (internal quotations omitted). Therefore, the focus of this court when considering this motion is "primarily on protecting the interests of the defendant." *Teck,* 28 F.Supp.2d at 991 (quoting *Davis v. USX Corp.,* 819 F.2d 1270, 1272 (4th Cir.1987)). The *Teck* court listed a number of general

factors that the Fourth Circuit endorsed, in an unpublished opinion, for determining prejudice to the defendant. These include:

> (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending.

*Id.* (quoting *Gross v. Spies,* 133 F.3d 914, 1998 WL 8006, *5 (4th Cir.1998) (unpublished)).

■ In this case, the defendant argues that it has spent considerable time and expense on this case thus far, including preparing and filing removal papers; filing responsive pleadings in both federal and state courts; preparing and serving initial disclosures; conducting witness interviews; performing preliminary legal research; attending court's scheduling conference; preparing and serving interrogatories and document requests; serving two separate notices for the plaintiff's depositions; filing motion to compel discovery; and preparing and filing this instant motion.[1] *See* Def.'s Mem., p. 6. While some courts have required more before denying a dismissal, *see e.g., S.A. Andes,* 788 F.2d at 1036 (motion to dismiss denied because defendants incurred significant litigation costs by responding to the complaint, filing motions for summary judgment, and conducting extensive discovery), other courts have found far less time and expense incurred by the defendant necessary to deny the motion to dismiss, *see, e.g., Teck,* 28 F.Supp.2d at 992 (denying motion to dismiss based on defendant's removal of the action, answering of the complaint, answering of interrogatories and requests for admission, serving interrogatories, filing two motions to compel, and filing a motion to strike plaintiff's expert witness). The

facts and circumstances involved here are certainly in line with those in *Teck* and therefore, it appears that factor one of the analysis weighs in favor of the defendant.

Factor two, the plaintiff's lack of diligence, also lends support for denying his motion to dismiss. As argued by the defendant, and not disputed by the plaintiff, the plaintiff has failed to adhere to discovery deadlines imposed in the Scheduling Order. The plaintiff has failed to respond to the defendant's written discovery requests and has cancelled his two scheduled depositions after they were set by mutual agreement. In addition, the plaintiff has not complied with the Local Rules of this court in failing to file (1) a memorandum of law in support of his Motion, (2) a rebuttal to the defendant's response to his Motion, and (3) a response to the defendant's Cross–Motion. Based on the plaintiff's lack of diligence, this factor lends further support to the defendant's position.

■ In addition, the plaintiff failed to provide a sufficient explanation of the need for the dismissal. The only reason the plaintiff has indicated as a basis for the dismissal is that he seeks to add an additional defendant and restate the grounds of his motion for judgment accordingly. However, this is best accomplished by a motion for leave to amend the complaint, not a motion to dismiss. Furthermore, as argued by the defendant, the plaintiff cannot seek a voluntary dismissal to circumvent adverse legal rulings against him. *Teck,* 28 F.Supp.2d at 992 (citing *Paturzo v. Home Life Ins. Co.,* 503 F.2d 333 (4th Cir.1974)). In this case, the plaintiff failed to make a timely jury demand. The defendant argues that allowing the plaintiff to voluntarily dismiss and refile the case will permit him to avoid the consequences of his prior failure as he will be able to

---

**1.** Filing a Motion for Summary Judgment    may now be added to this list as well.

demand a jury. This was the situation in *Paturzo*, where the Fourth Circuit affirmed a district court's refusal to allow the plaintiff to dismiss a portion of its case in order to obtain a jury after failing to demand one in the original case. *Paturzo*, 503 F.2d at 336. Without any dispute by the plaintiff to this allegation, the court has no choice but to consider this fact in its decision. As a whole, these facts weigh against the plaintiff's Motion for Voluntary Dismissal.

Finally, there is now a Motion for Summary Judgment pending. While the plaintiff did file his Motion to Dismiss prior to the filing of the Motion for Summary Judgment, this does not outweigh the fact that the defendant will suffer substantial prejudice if the case is dismissed without prejudice. Therefore, based on the totality of the circumstances presented on this matter, the court finds that in order to protect the interests of the defendant, the plaintiff's Motion for Voluntary Dismissal is DENIED.

### B. Defendant's Cross–Motion for Dismissal with Prejudice

In its Cross–Motion, the defendant argues that based on the plaintiff's failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and discovery deadlines, the case should be dismissed with prejudice. "Under Rule 41(b) of the Federal Rules of Civil Procedure, a court can dismiss an action where the plaintiff fails to comply with the Federal Rules of Civil Procedure or with any of the court's orders." *Claitt v. Newcomb*, 138 F.R.D. 72, 75 (E.D.Va.1990) (citing *Herbert v. Saffell*, 877 F.2d 267, 268 (4th Cir.1989)). In determining whether Rule 41(b) dismissal is an appropriate sanction, a district court must consider

(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused by the defendant, (3) the existence of a drawn out history of delib-

erately proceeding in a dilatory fashion, and (4) the existence of sanctions less drastic than dismissal.

*Id.* (quoting *Herbert*, 877 F.2d at 270). In sum, the court must consider these four factors as they relate to the facts of this case and "balanc[e] the sound public policy of deciding cases on their merits against considerations of sound judicial administration." *Id.*

In this case, the court is unclear as to the overall degree of personal responsibility of the plaintiff; however, it is clear that the two cancelled depositions were at the plaintiff's request. Furthermore, plaintiff has offered no reason for failing to comply with the Federal Rules of Civil Procedure and Local Rules in other aspects of the case thus far, such as filing memoranda of law with his motions and responding to discovery requests on time. The plaintiff's failure to comply with these rules is completely inexcusable and therefore, this factor weighs heavily against the plaintiff.

■ However, since the filing of these Motions to Dismiss, the plaintiff apparently has been cooperating in the proceedings, as is evidenced by a copy of his deposition transcript attached to plaintiff's Opposition to Summary Judgment. *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp."), Dkt. 14, attachment. The case appears to have picked up pace since the Cross–Motion was filed, and as such, this court is reluctant to grant a Motion to Dismiss. While the plaintiff initially gave this court the impression that he would continue to proceed in this dilatory fashion, as was evidenced by his failure to respond to this Cross–Motion, the plaintiff has since changed gears and is proceeding according to the rules of this court, as is evidenced by his filing of an Opposition to the defendant's Motion for Summary Judgment. Therefore, at this juncture, the defendant's

Cross–Motion for Dismissal with Prejudice is DENIED.

## C. Defendant's Motion for Summary Judgment

As stated above, the defendant raises five grounds for summary judgment, which include: (1) Virginia law bars the plaintiff's claims regarding the defendant's communications with the VEC; (2) the defendant's communications with the VEC and the EEOC are absolutely privileged; (3) the defendant's communications with the FBI are absolutely privileged; (4) the plaintiff has failed to offer any evidence of malice; and (5) the alleged statements are not defamatory. The court will address these grounds in turn.

### 1. Standard of Review

Summary judgment is appropriate when it is apparent from the entire record, viewed in light most favorable to the non-moving party, that there are no genuine disputes of material fact. *See, e.g., Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When a court declines to grant summary judgment, sufficient evidence must exist favoring the nonmoving party which would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A properly supported motion for summary judgment may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–48, 106 S.Ct. 2505. The requirement is that there are no genuine issues of material fact. *See id.* Entry of summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

In this case, the majority of the facts do not appear to be in dispute. Rather, the parties disagree over the legal significance of a number of facts. Therefore, with this in mind, the court turns to the first dispute.

### 2. Virginia law bars the plaintiff's claim regarding the defendant's communications with the VEC

■ The defendant first argues that Virginia law bars the plaintiff's claims regarding communications with the VEC. Under Virginia law, information furnished to the VEC "shall not be ... used in any judicial or administrative proceeding other than one arising out of the provisions of this title...."[2] Va.Code § 60.2–623(B) (Michie 2001). Numerous courts, both state and federal, have refused to consider any statements made in relation to a proceeding before the VEC based on this statute. *See Gordon v. Newspaper Assoc. of Am.*, 51 Va.Cir. 183, 188 (2000); *Starks v. McCabe*, 49 Va.Cir. 554, 555 (1998); *see also Konjevich v. Washing Sys., Inc.*, No. 93–1763, 1994 WL 118114, at *1–2, 1994 U.S.App. Lexis 6965, *4 (4th Cir.1994) (unpublished). Moreover, in a case with facts similar to those in this case, this court concluded that "Va.Code § 60.2–623 prohibits Plaintiff from using the two reports submitted to the VEC to support his claim for defamation. Without the use of the VEC reports... Plaintiff fails to establish the necessary elements of the tort of defamation, namely publication of an actionable statement." *Moore v. PYA Monarch,*

---

**2.** There has been no evidence to suggest that this case arises under Title 60.2, where use of the statements made to the VEC is permissible.

*LLC,* 238 F.Supp.2d 724 (E.D.Va.2002). Therefore, the court cannot use the statements or information given to the VEC by the defendant as a basis for this defamation lawsuit. Without these statements, the plaintiff's claim cannot succeed. Thus, the defendant's Motion for Summary Judgment on this ground is GRANTED.

### 3. The defendant's communications with the EEOC are absolutely privileged [3]

■ In its second ground in support of its Motion for Summary Judgment, the defendant argues that its communications with the EEOC regarding the plaintiff's termination are absolutely privileged because they were communications made with respect to a judicial or quasi judicial proceeding. The court agrees.

■ In Virginia, words spoken or written in a judicial proceeding are absolutely privileged provided the words are relevant to the subject matter of the proceeding. *See Darnell v. Davis,* 190 Va. 701, 707, 58 S.E.2d 68 (1950). The Supreme Court of Virginia has held that

> the privilege of judicial proceedings is not restricted to trials of civil actions or indictments, but it includes every proceeding before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action of such court or officer. The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi judicial powers. It applies to communications made before tribunals having attributes similar to those of courts.

*Penick v. Ratcliffe,* 149 Va. 618, 627–28, 140 S.E. 664 (1927) (citation and quotation omitted). In this case, the court must decide whether proceedings before the EEOC are quasi-judicial in nature such that the defendant's communications would be absolutely privileged.

The EEOC is charged by statute to enforce the various fair-employment statutes, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* When an aggrieved individual, such as the plaintiff, files a charge of discrimination, the EEOC must serve a copy of the charge on the respondent, such as the defendant in this case, within ten days. *See* 29 C.F.R. § 1601.14(a). The EEOC is then required to investigate the charge, where the respondent is able to provide its position as to the charge. *Id.* at § 1601.15(a). During this investigation, the EEOC has the authority to request documents and other information from the parties, as well as the authority to interview witnesses. *Id.* at § 1601.16. If either party does not provide the requested documents or information, the EEOC can issue a subpoena for the information. *Id.* This subpoena can be enforced in federal court if the party refuses to comply with it. *Id.* At the conclusion of its investigation, the EEOC states whether or not it finds "reasonable cause" to believe that an unlawful employment practice occurred. *Id.* at §§ 1601.19, 1601.21. If the EEOC finds reasonable cause exists, the EEOC may file suit on behalf of the aggrieved party, or notify that party of his right to bring a lawsuit in federal court. *Id.* at § 1601.21. This notice of right to sue will also be issued when the EEOC finds no reasonable cause to believe discrimination has occurred. *Id.* at § 1601.19.

---

**3.** All of the arguments regarding communications with the EEOC would also apply the communications with the VEC if the court had not found them to be statutorily barred as a basis for this lawsuit as discussed in section II.C.2 above.

In this case, the plaintiff filed a charge of discrimination with the EEOC alleging that he was terminated based on his religion.[4] The EEOC required the defendant to furnish a written position statement and produce numerous documents, including the company's investigation and witness statements it had obtained. In response to the EEOC's request, the defendant submitted a position statement responding to the plaintiff's allegations; however, it refused to submit the witness statements on privilege and confidentiality grounds. By letter dated November 14, 2001, the EEOC requested additional documents, which the defendant provided them on or about November 28, 2001. On January 30, 2002, the EEOC again requested that the defendant provide copies of all witness statements from those who had complained about the plaintiff. In its letter, the EEOC threatened to subpoena the records if the defendant did not promptly comply. On February 12, 2002, the defendant provided the EEOC with copies of the witness statements it obtained in its investigation prior to the plaintiff's termination. The EEOC dismissed the plaintiff's charge on February 28, 2002.

It appears to this court that based on the nature of the EEOC proceedings, its power to subpoena documents, information and witnesses, and its power to file a lawsuit at the conclusion of its investigation, makes the proceedings before the EEOC quasi-judicial. In addition, the requirement that an aggrieved party file a charge with the EEOC as a prerequisite to filing a lawsuit lends further support to the quasi-judicial nature of the proceedings.[5] *See Donohoe Construction Co. v. Mount Ver-*

*non Assoc.*, 235 Va. 531, 538–39, 369 S.E.2d 857, 861 (1988) (finding that the filing of a memorandum of mechanic's lien, which is a prerequisite to filing a lawsuit to enforce the lien, was a judicial proceeding entitled to absolute privilege). As such, any statements or information provided by the defendant relevant to these proceedings are absolutely privileged. This holding comports with that of many other courts. *See, e.g., Yeitrakis v. Schering–Plough Corp.*, 804 F.Supp. 238, 249 (D.N.M.1992) (holding that the defendant's "publication of the reason [for plaintiff's termination] to the [Employment] Commission was absolutely privileged as being required by law for quasi-judicial proceedings."); *Hawthorne v. Washington Metropolitan Area Transit Auth.*, 702 F.Supp. 285, 288 (D.D.C.1988) (finding that remarks made to the District of Columbia's Office of Unemployment Compensation were absolutely privileged because the proceedings were quasi-judicial in nature); *Kettering v. Diamond–Triumph Auto Glass, Inc.*, 24 Fed. Appx. 352, 357–58 (6th Cir.2001) (unpublished) ("Under Ohio law, statements made to the Equal Employment Opportunity Commission are absolutely privileged."); *Allen v. St. Cabrini Nursing Home, Inc.*, 2001 WL 286788, *6 (S.D.N.Y. Mar. 9, 2001) (holding that statements made to the administrative agencies, including the EEOC, are protected by absolute privilege).

Furthermore, there are many cases that stand for the proposition that there is an absolute privilege against the filing of a defamation charge by an employer against an employee who files a charge of discrimi-

---

**4.** These facts are taken from the defendant's Statement of Undisputed Facts in its Motion for Summary Judgment, which were essentially repeated verbatim by the plaintiff in his Opposition. *See* Def.'s Mem. in Supp. of its Mot. for Summ. J. ("Def.'s Mem."), Dkt. 13, pp. 5–6 *and* Pl.'s Opp., pp. 5–6.

**5.** It is well-settled that a claimant under Title VII must exhaust his administrative remedies with the EEOC before bringing a private action in federal court. *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999)

nation with the EEOC. *See, e.g., Blizzard v. Newport News Redevelopment and Housing Authority,* 670 F.Supp. 1337, 1344 (E.D.Va.1984); *Equal Employment Opportunity Commission v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775, 778 (W.D.Va.1980); *Blistein v. St. John's College,* 860 F.Supp. 256, 269 (D.Md.1994). While the court is mindful that the rationale behind this privilege is to permit employees to file allegations of discrimination without the fear of retaliation by the employer, the underlying logic should apply to the case at bar. The defendant in this case responded, as ordered by the EEOC, to a claim of discrimination filed by the plaintiff. The defendant had an obligation to respond, as well as a right to defend itself from the charges brought against it. Thus, the defendant should be entitled to protection from a claim of defamation. Finally, the plaintiff initiated these proceedings by filing a charge of discrimination against the defendant. As such, he impliedly consented to the defendant's use of the evidence supporting his termination. *See, e.g., Yeitrakis,* 804 F.Supp. at 250.

Therefore, the court finds that the proceedings before the EEOC were quasi-judicial in nature. As such, any relevant communications between the defendant and the EEOC are absolutely privileged and may not serve as the basis for this defamation lawsuit. The defendant's Motion for Summary Judgment with respect to its communications with the EEOC is GRANTED.

### 4. The defendant's communications with the FBI are absolutely privileged

The plaintiff also alleges that the defendant published defamatory statements to the FBI by submitting the same report previously submitted to the EEOC and VEC regarding the plaintiff's statements to customers. *See* Pl.'s Opp., Ex. 1, p. 2. In its Statement of Undisputed Facts, the defendant states that the FBI was contacted by the Suffolk Police after the plaintiff's comments were reported by the employees at the Open House Diner, one of the plaintiff's regular customers. *See* Def.'s Mem., p. 4, ¶ 6; see also Pl.'s Opp., p. 4, ¶ 6. The following day, two FBI agents visited the defendant's Virginia Beach facility to investigate the report. *Id.* There is no other mention of the alleged FBI report in either the defendant's Statement of Undisputed Facts, or in the plaintiff's Statement of Undisputed Facts. The defendant asserts that any statements made by it or its employees in response to an FBI investigation are privileged and may not be the basis of a defamation lawsuit. The plaintiff, on the other hand, objects, arguing that these statements were not privileged and have defamed him.[6]

The plaintiff is correct in his assertion that section 60.2–623 of the Code of Virginia does not protect the communications the defendant had with the FBI. However, the inquiry cannot end there. The defendant complied with a federal investigation by providing the information it possessed on the plaintiff to the FBI. The defendant cites two cases from this circuit which stand for the proposition that immunity shields statements made with respect to governmental investigations. *See Mangold v. Analytic Svcs., Inc.,* 77 F.3d 1442 (4th Cir.1996); *Becker v. Philco Corp.,* 234 F.Supp. 10 (E.D.Va.1964). However, the plaintiff is correct in that these cases dealt with narrow areas where the individual providing the information was a government contractor or an organization that

---

**6.** The plaintiff has not provided any evidence of the substance of these statements. The plaintiff simply asserts that they "falsely ac- cused Mr. Shabazz of having terrorist ideations and supporting the Muslim terrorists." Pl.'s Opp., Ex. 1, p. 2.

must comply with governmental regulations. Such is not the case here, as the defendant is a private company. However, in *Holmes v. Eddy,* the Fourth Circuit held that information given to the Securities and Exchange Commission ("SEC") by a private person (a stockbroker) for the purpose of initiating a prosecution "is protected by the same cloak of immunity and cannot be used as a basis for an action for defamation." 341 F.2d 477, 480 (4th Cir. 1965). The court sees very little distinction between the *Holmes* case and the case at bar. Here, the defendant was asked by the FBI to provide information on the plaintiff. In so complying, the defendant's statements are protected by immunity and cannot be the basis of the plaintiff's defamation action.[7]

Moreover, as stated by the defendant in its Reply Brief, in the aftermath of September 11, 2001, Congress has indicated that prompt reporting of any possible terrorist activity or support of such activity is essential to national security. *See* Def.'s Reply Br. in Supp. of its Mot. for Summ. J. ("Def.'s Reply"), Dkt. 15, pp. 6–7. Law enforcement agencies, including the FBI, have emphasized the importance of citizens providing tips regarding any possible terrorist activity. In fact, the FBI has an online form to assist citizens in submitting this information. *See* FBI Tips and Public Leads, *available at* https://tips.fbi.gov (last visited March 11, 2003) ("While the FBI continues to encourage the public to submit information regarding the September 11, 2001, terrorist attacks, this form may also be used to report any suspected criminal activity to the FBI."). It seems incongruous to the court to encourage people to submit tips, or respond to inquiries initiated by the FBI, and then hold them liable for defamation if the information provided turns out to be untrue. Therefore, in accordance with the principles developed in *Mangold* and *Holmes,* the court finds that the defendant's communications with the FBI are absolutely privileged. As such, the defendant's Motion for Summary Judgment for communications made to the FBI is GRANTED.

### 5. No evidence of malice

■ Assuming, *arguendo,* that the defendant's communications with these agencies were not absolutely privileged, they would still be covered by a common-law qualified privilege. In Virginia, "[a] communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral, or social, is qualifiedly privileged if made to a person having a corresponding interest or duty." *Taylor v. Grace,* 166 Va. 138, 144, 184 S.E. 211, 213 (1936). Accordingly, courts have held that communications made in the context of an employment relationship are covered by this qualified privilege. *See, e.g., Southeastern Tidewater Opportunity Project, Inc. v. Bade,* 246 Va. 273, 276, 435 S.E.2d 131, 132 (1993) (holding that a letter of termination, which included accusations of misconduct, was qualifiedly privileged); *Kroger Co. v. Young,* 210 Va. 564, 566, 172 S.E.2d 720, 722 (1970) (finding that statements made "by an employer to his employees of reason for the discharge of a fellow employee ... are qualifiedly privileged."). Likewise, communications to law enforcement, including the FBI, would also be protected by qualified privilege. *See Marsh v. Commercial AN Savings Bank of Winchester, Va.,* 265 F.Supp. 614, (W.D.Va.1967) (finding, as a matter of law,

---

**7.** In *Holmes,* the defendant voluntarily provided the SEC with the allegedly defamatory information. 341 F.2d at 478. Therefore, even if the defendant voluntarily contacted the FBI and provided information on the plaintiff rather than respond to an FBI inquiry, which there is no evidence to support, the court's ruling would be the same.

that statements made by two bank tellers to the police regarding robbery were occasions of qualified privilege which could not be used as the basis for defamation claim); *see also Howell v. Operations Mgmt. Int'l, Inc.,* 161 F.Supp.2d 713, 717 (N.D.Miss. 2001) (holding that employer's reporting of suspicious activity to sheriff's office is protected by qualified privilege); *Baer v. Sprint Long Distance,* 60 F.Supp.2d 209, 211–12 (S.D.N.Y.1999) (finding employer's statements to police regarding suspicion that employee committed theft are privileged). Therefore, the defendant's statements to the VEC, EEOC, and FBI, if not protected by absolute privilege, are covered by qualified privilege.

A qualified privilege may be defeated "if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." *Southeastern Tidewater,* 246 Va. at 276, 435 S.E.2d 131 (quoting *Smalls v. Wright,* 241 Va. 52, 55, 399 S.E.2d 805, 808 (1991)); *accord Marsh,* 265 F.Supp. at 621 (quoting *Peoples Life Ins. Co. of Washington D.C. v. Talley,* 166 Va. 464, 469, 186 S.E. 42, 44 (1936)). The defendant argues that the plaintiff has failed to offer any evidence, let alone clear and convincing evidence, that the defendant acted with malice when it provided its statements and reports to the VEC, EEOC, and FBI. The plaintiff fails to address this argument by the defendant in his Opposition. Without any evidence of actual malice on the part of the defendant, the qualified privilege afforded to these communications is not defeated. *See, e.g., Round v. Boeing N. Am. Svcs., Inc.,* 181 F.3d 90, 1999 WL 417452 (4th Cir.1999) (unpublished) (affirming district court's grant of summary judgment where there was no evidence showing that defendant acted with malice that would destroy the qualified privilege of the communica-

tions). Accordingly, the plaintiff cannot meet the legal requirements of the tort of defamation and summary judgement is appropriate.[8]

## IV. Conclusion

For the reasons discussed above, the plaintiff's Motion for Voluntary Dismissal is **DENIED.** The defendant's Cross–Motion for Dismissal with Prejudice is **DENIED.** The defendant's Motion for Summary Judgment is **GRANTED.**

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record.

It is so **ORDERED.**

---

8. The remaining ground for summary judgment offered by the defendant need not be

ruled upon as it has been rendered moot by the court's holding.