Present: All the Justices

LISHA BRYANT-SHANNON

v.  Record No. 200153

HAMPTON ROADS COMMUNITY
ACTION PROGRAM, INC.

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
APRIL 8, 2021

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
William R. Savage, III, Judge Designate

In this appeal, we consider whether the Circuit Court of the City of Newport News ("circuit court") erred when it dismissed with prejudice an amended complaint filed by Lisha Bryant-Shannon ("Shannon") against the Hampton Roads Community Action Program, Inc. ("HRCAP") alleging its liability for defamatory statements made by HRCAP Interim Executive Director Tina Vick ("Vick").

I.  Facts and Proceedings

Shannon worked at HRCAP for 31 years and as its Deputy Director for nearly 14 years. Vick is a member of the Newport News City Council, was the Vice Mayor, and served as the chair on HRCAP's board of directors. On or about June 30, 2015, the former Executive Director of HRCAP, Wendell Braxton ("Braxton"), resigned with an effective date of August 31, 2015. The written succession plan provided that the Deputy Director would succeed as Acting Executive Director, but Shannon did not become the Acting Executive Director.

Vick sought appointment as Acting Executive Director to eventually become the permanent Executive Director. Shannon had previously applied for the position of Executive Director and was "again interested to be a candidate for the position." During a July 17, 2015

board meeting, the HRCAP board of directors nominated Vick as Interim Executive Director on a "consulting" basis effective August 10, 2015.

Shannon submitted a leave slip to then-Executive Director Braxton for September 4th, 2015 at 8:00 a.m. until September 14th, 2015, at 5:00 p.m. Braxton approved Shannon's leave on August 3, 2015, before the effective date of his resignation. Shannon informed Vick of the pending vacation during an Executive Staff Meeting on September 1, 2015.

On or about September 14, 2015, Vick convened a scheduled meeting with Shannon concerning HRCAP business matters. During that meeting, Vick "broached the HRCAP personnel tensions resulting from the controversial hire of Vick as the Interim Executive Director" and discussed certain behaviors in the workplace. Vick wrote the September 14, 2015, HRCAP Disciplinary Action Form ("Disciplinary Action Form") that is the subject of this appeal and placed it in Shannon's personnel file.

While still employed by HRCAP, on November 12, 2015, Shannon filed a *pro se* complaint in the circuit court against Vick and HRCAP for defamation based on the statements made in the Disciplinary Action Form. Shannon was subsequently terminated from her position with HRCAP by letter dated February 8, 2016.

Shannon applied for unemployment benefits to the Virginia Employment Commission ("VEC") on July 10, 2016. The VEC conducted a fact-finding hearing on July 26, 2016. Angela Futrell ("Futrell"), Vick's successor as HRCAP's chair of the board of directors, testified during this hearing. There is no transcript from the July 26, 2016 hearing. The VEC denied Shannon's application for unemployment benefits.

On June 19, 2016, Shannon took a voluntary first nonsuit of the defamation action she had filed against Vick and HRCAP on November 12, 2015. On December 14, 2016, Shannon

filed the present action against HRCAP, stating additional claims for defamation based on the republication of the allegations of Vick's memorandum during the VEC proceedings and other statements made by Vick. The circuit court sustained HRCAP's demurrer, with leave to amend. Thereafter, Shannon filed her amended complaint on November 19, 2018. HRCAP responded to the amended complaint with a demurrer, special pleas of the statute of limitations, absolute privilege, and charitable immunity, and a plea in bar regarding the issue of publication.

The circuit court conducted a hearing on HRCAP's motions on August 16, 2019. In an order dated November 25, 2019, the court sustained the demurrer, holding that the Disciplinary Action Form "is not defamatory as a matter of law." The circuit court granted the special plea of the statute of limitations and held that "those statements that are alleged in paragraphs 27, 31, 36, and 39 of the . . . Amended Complaint are time-barred and STRICKEN from this action." The court further held that inasmuch as the statements in the enumerated paragraphs related to the content contained in the Disciplinary Action Form, "those statements are further subject to this Court's sustaining of the Demurrer in addition to" the granting of the special plea of the statute of limitations. Finally, the circuit court denied the special plea of absolute privilege "with respect to statements alleged to have been made at the July 26, 2016 [VEC] hearing, as alleged in paragraph 35 of the . . . Amended Complaint." The order states that: "The Court notes that its prior ruling with respect to statements made before the [VEC], as reflected in paragraph (2) of this Court's Order entered December 12, 2018, is hereby REVERSED." Accordingly, the matter proceeded only on those statements alleged in paragraph 35 of the amended complaint pertaining to the VEC hearing.

3

Shannon filed a motion for reconsideration of the partial-dismissal or, alternately, requesting leave to amend. HRCAP filed a motion to reconsider the ruling with respect to whether statements made during the VEC proceedings were privileged.

In a final order dated November 25, 2019, the circuit court granted HRCAP's motion to reconsider and the special plea of absolute privilege. The circuit court reversed its prior ruling on the special plea, holding that the statements alleged in paragraph 35 pertaining to the July 26, 2016, VEC proceeding were "subject to Virginia Code § 60.2-623(B), and, inasmuch as this matter does not arise under Title 60.2 of the Code of Virginia, those allegations are STRICKEN from this matter." Because this ruling disposed of the last basis for Shannon's claim of defamation, the circuit court dismissed the amended complaint with prejudice, without leave to amend. Shannon appealed to this Court.

We granted Shannon's appeal on the following assignments of error:

1. The Trial Court erred in granting the Defendant Hampton Roads Community Action Program's (HRCAP's) Demurrer and in holding that the statements HRCAP Interim Executive Director Tina Vick made in the September 14, 2015 Disciplinary Action [F]orm against the Plaintiff Lisha Bryant-Shannon (Shannon) were not defamatory, despite Vick's false accusations that Shannon had abused her paid vacation-sick leave, violated HRCAP e-mail policy, and improperly treated salaried employees as hourly ones in violation of federal labor law.

2. The Trial Court erred in granting HRCAP's Special Plea of Absolute Privilege, since a VEC hearing is not a judicial proceeding, Futrell's defamatory statements falsely accusing Shannon of "stealing" HRCAP e-mails do not constitute information to be "used" in support of any cause of action based on the breach of a separate duty or obligation, and Vick later republished these statements to a third party.

## II. Analysis

### A. Standard of Review

In an appeal from a defamation action decided on demurrer, we "conduct a de novo review of the statement in question to independently determine (a) . . . whether it is capable of

4

being proved true or false, and (b) whether it has the requisite defamatory 'sting' to one's reputation." *Handberg v. Goldberg*, 297 Va. 660, 668 (2019) (some quotation marks omitted).

"While '[t]he standards of review for a defensive plea in bar and a demurrer are substantially similar, [a] plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party has the burden of proof on that issue." *Station #2, LLC v. Lynch*, 280 Va. 166, 175 (2010) (quoting *Sullivan v. Jones*, 42 Va. App. 794, 802 (2004) and *Hilton v. Martin*, 275 Va. 176, 179-80 (2008)).  The question whether an absolute or qualified privilege applies to the circumstances of the pending case presents a question of law that is reviewed de novo. *Isle of Wight County v. Nogiec*, 281 Va. 140, 152-53 (2011).

### B.  Defamation

An "actionable" statement is both false and defamatory. *Tharpe v. Saunders*, 285 Va. 476, 481 (2013).  Defamatory words are those "tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (interpreting Virginia law).  This Court has described the requisite defamatory "sting" for an actionable claim as containing language that:

> tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous.

*Schaecher v. Bouffault*, 290 Va. 83, 92 (2015).

A statement must contain the requisite defamatory sting to be actionable.  In *Schaecher*, a planning commission member wrote a series of emails regarding a business owner who applied for a special use permit to operate a dog kennel.  In the emails, the planning commission member

5

stated that the proposed use by the applicant would potentially violate county ordinances, recorded covenants, and easements. *Id.* at 94. The planning commission member further wrote that "[i]t would appear that [the applicant] was not totally truthful" in the application. *Id.* at 100. The applicant filed suit for defamation, and the circuit court sustained the planning commission member's demurrer, finding that the statements were not defamatory as a matter of law.

Applying the definition above, this Court held that the statements did not carry the requisite "defamatory sting" for an actionable claim. *Id.* at 95-96 ("The face of these emails does not reasonably convey defamatory 'sting.'"). This Court held that the implication that the applicant may be in violation of an easement, "absent more—such as inflammatory language or context to suggest that the statement causes particular harm to one's reputation—does not rise to the level of defamation." *Id.* at 96. Regarding the potential violation of covenant restrictions, this Court held that "the breach of a contract does not necessarily bring with it defamatory connotation." *Id.* Finally, this Court did not find the statements pertaining to the violation of county ordinances as carrying the requisite defamatory "sting." The ordinance required a free-standing dwelling unit and any accusation of violation did not, "on the face of the document," "render the [applicant] odious, infamous, or ridiculous, or otherwise subject [the applicant] to contempt, shame, scorn, or disgrace." *Id.*

This Court then turned to the statements related to the applicant's honesty. In such statements, this Court noted "context is of utmost importance." *Id.* at 101. In *Schaecher,* the planning commission member raised a concern about whether the applicant owned a commercial kennel operation or if she only owned personal dogs. The information from the applicant was conflicting, leading the planning commission member to conclude that "[i]t would appear that [the applicant] was not totally truthful." *Id.* In order to be actionable, defamatory statements

6

must be such that "[r]eputation must be affected to a magnitude sufficient to render one odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt." *Id.* at 101. While the characterization that the applicant was "not totally truthful" was unpleasant, this Court held that "[m]erely offensive or unpleasant statements are not defamatory." *Id.* (quoting *Chapin,* 993 F.2d at 1092).

In this case, the statements at issue are contained within the three paragraphs of the Disciplinary Action Form. The first paragraph pertains to Shannon "abus[ing] her paid vacation-sick leave." The paragraph states:

> [Y]ou are not allowed to take sick leave without giving notice to your immediate supervisor prior to the start of the work day or contact with your supervisor about you taking off of work for sick leave. You were on vacation and on September 10, 2015, I was told by the administrative assistant at approximately 2 pm that you were taking sick leave because you were not feeling well. On September 11, 2015 you came in the office after 9 am and you did not communicate with your immediate supervisor, who is the interim executive director that you would be off for more than half of the day. I was not aware that you were on vacation for the entire week.

This statement, without more, does not rise to the necessary level of defamatory "sting." The statement does not "tend so to harm the reputation of [Shannon] as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *Schaecher,* 290 Va. at 91. It was an instruction from a supervisor to a subordinate to improve "clarity in communication to me, when you are on leave and when you will be reporting to work." The circuit court found that "[a]t the end of the first paragraph she merely says there needs to be clarity and communication to me. That is not accusing [Shannon] of anything." We agree.

7

The second paragraph of the Disciplinary Action Form states:

> [O]n September 9, 2015, you . . . engaged in several email messages concerning the minutes of one of our board meetings. You also emailed Mrs. Ben Shalom about the status of one of the agency vans. You were engaging in these activities while you were on vacation. I am requesting that when you are on vacation, please refrain from any communication with staff unless it is an emergency.

This statement is a request by Vick that Shannon not communicate with staff or participate in email traffic while Shannon is on vacation in the future. The statement is not defamatory and does not contain "sting." The circuit court found that "I am requesting that you are – when you are on vacation, please, refrain from communication. That's not accusing [Shannon] of anything." We agree with the circuit court that this statement did not contain the requisite defamatory "sting" so as to cast Shannon into infamy.

The third paragraph of the Disciplinary Action Form states:

> I am also aware that there has been an issue with salaried employees being treated as if they were hourly. If an employee is salaried and comes to work after 8 am, he or she is not required to take annual leave, especially if he or she works later than 5 pm. This also will not be tolerated in the workplace. This issue will be resolved as I have contacted the Department of Labor about this treatment.

This statement contains an observation, not defamatory "sting." It observes that employees have been treated as though they were hourly instead of salaried, but does not indicate who has done so or how. The circuit court found that "it doesn't accuse [Shannon] of doing anything. It's merely a statement. This is merely a communication between co-workers about office policy by somebody who is very new to the job." We agree that this statement is not defamatory.

None of the statements contained in the Disciplinary Action Form would make Shannon appear odious, infamous, or ridiculous, or would otherwise subject her to contempt, shame, scorn, or disgrace. This Court's jurisprudence on defamation acknowledges that statements can be made that are offensive, unpleasant, harsh, and critical without necessarily constituting defamation. The Disciplinary Action Form did not convey defamatory "sting" and rightfully did not survive demurrer. We hold that the statements were not defamatory as a matter of law.

### C. Absolute privilege in VEC proceedings

Code § 60.2-623 governs claims adjudication for the VEC. Code § 60.2-623(B) states in pertinent part:

> Information furnished the Commission under the provisions of this chapter shall not be open to public inspection, other than to public employees in the performance of their public duties. Neither such information, nor any determination or decision rendered under the provisions of § 60.2-619, 60.2-620 or 60.2-622, shall be used in any judicial or administrative proceeding other than one arising out of the provisions of this title; . . . The Commission may also, in its discretion, furnish copies of the transcript of hearings to any party.

The statute is written broadly to prohibit all "information furnished" to the VEC from being "used" in "any judicial or administrative proceeding" not arising under Title 60.2.

The broad nature of the statute encourages employees and employers to be candid in their statements to the VEC. Issues such as fitness and integrity in the workplace come before the VEC. Statements made about such issues could give rise to claims of defamation. Without this statute, employees and employers would experience a chilling effect on the presentation of evidence before the VEC.

In paragraph 35 of the amended complaint, Shannon alleges:

> At the July 26, 2016 VEC hearing on [Shannon's] unemployment benefits application, Angela Futrell, HRCAP Board Chairman falsely stated that [Shannon] had filed a "$30 million lawsuit"

9

> versus HRCAP and then falsely accused [Shannon] of "stealing" HRCAP documents and e-mails, including the minutes of the August 6, 2015 HRCAP Board meeting and the time records of Vick, by forwarding them to [Shannon's] home or to her husband Andrew Shannon without a legitimate need for these documents.

The record before this Court does not contain a transcript with statements made by Futrell. At the first stage of VEC proceedings, the hearing is held "by phone call." During the phone call, only the "hearing officer from the VEC, the claimant, the claimant's attorney, the employer, the employer's attorney, and the employer's representative" are present.

"It is settled law in Virginia that words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." *Darnell v. Davis*, 190 Va. 701, 707 (1950). In the context of Code § 60.2-623(B), the Court of Appeals and circuit courts have recognized proceedings before the VEC as quasi-judicial in nature. Specifically, the Court of Appeals has held that "the evidentiary rule shifting the burden of going forward with the evidence to the opposing party upon establishment of a *prima facie* case by the party with the burden of proof applies in quasi-judicial administrative proceedings before the VEC." *Whitt v. Ervin B. Davis & Co.*, 20 Va. App. 432, 438-39 (1995).

Several Virginia circuit courts have concluded that Code § 60.2-623(B) grants absolute privilege to statements made during VEC proceedings. In *Starks v. McCabe*, 49 Va. Cir. 554 (Norfolk Cir. Ct. 1998), the circuit court sustained a demurrer to a defamation action based on Code § 60.2-623(B). In that case, the plaintiff had been discharged from the Norfolk Sheriff's Office and later filed suit for defamation based upon statements made by her supervisor during a VEC hearing. The circuit court held that "[t]his action does not arise out of Title 60.2 of the Code, and that statute's unqualified prohibition of the use of such information in this action bars my consideration of it." *Id.* at 555. In *Gordon v. Newspaper Ass'n of Am.*, 51 Va. Cir. 183

10

(Richmond Cir. Ct. 2000), the circuit court found that the defendant's attorney-client privilege had not been waived by disclosing information concerning the plaintiff's employment termination in a letter written to the VEC and in testimony during the VEC hearing. The proceeding did not arise out of Title 60.2, so the circuit court held that Code § 60.2-623 "unambiguously precludes the use of the letter written to the VEC and the admission of the testimony in this proceeding for the purpose of considering a waiver of the attorney-client privilege." *Id.* at 188. In *Elliott v. Harris Tire Co.*, 66 Va. Cir. 399 (Lynchburg Cir. Ct. 1994), the circuit court granted a motion *in limine* to exclude the transcript and written opinions from the VEC in a separate civil action, ruling that "any testimony or opinions issued in the context of the [VEC] proceedings are not admissible because this case is brought under a different title of the Code of Virginia." *Id.* at 399.

Federal courts have drawn the same conclusion about Code § 60.2-623(B). The Eastern District of Virginia has entertained two cases involving Code § 60.2-623(B) and its prohibition on the use of statements made before the VEC to support a defamation claim. In *Moore v. PYA Monarch, LLC,* 238 F. Supp.2d 724 (E.D. Va. 2002), an employer was faced with a defamation claim based upon statements made before the VEC. In dismissing the claim with prejudice, the federal district court held that "because this proceeding does not arise under Title 60.2, Va. Code § 60.2-623 prohibits plaintiff from using the two reports submitted to the VEC to support his claim for defamation." *Id.* at 729.

In *Shabazz v. PYA Monarch, LLC*, 271 F. Supp.2d 797 (E.D. Va. 2003), the plaintiff claimed that his former employer made false, slanderous, and defamatory statements before the VEC in response to his wrongful discharge claim. The court relied on Code § 60.2-623(B) to grant the defendant's motion for summary judgment, noting that "[n]umerous courts, both state

11

and federal, have refused to consider any statements made in relation to a proceeding before the VEC based on this statute." *Id.* at 802.  The court dismissed the defamation claim with prejudice and held that "the court cannot use the statements or information given to the VEC by the defendant as a basis for this defamation lawsuit." *Id.*

The Western District of Virginia analyzed Code § 60.2-623(B) in *Walker v. Mod-U-Kraf Homes, LLC*, 2015 WL 4400227 (W.D. Va. 2015) (unpublished).  In that case, the plaintiff claimed that her former employer testified falsely at trial and attempted to rely upon a one-page excerpt from a handwritten note that was part of the VEC record.  The court held that "[b]ecause the use of such information in judicial proceedings is prohibited by Virginia law, the court declines to consider the exhibit submitted by the plaintiff." *Id.* at *2.

We hold that Code § 60.2-623(B) grants absolute privilege to statements made during VEC proceedings and affirm the circuit court's order granting HRCAP's special plea of absolute privilege.

III.  Conclusion

For the reasons stated, we will affirm the judgment of the circuit court.

*Affirmed.*